**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ROBERT SPRINGSTEEN, IV,** | § | |
| | § | |
| **v.** | § | **A-13-CV-427 LY** |
| | § | |
| **SUSAN COMBS, IN HER OFFICIAL** | § | |
| **CAPACITY AS TEXAS COMPTROLLER** | § | |
| **OF PUBLIC ACCOUNTS**[1] | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Respondent Susan Combs' Motion to Dismiss for Lack of Jurisdiction (Dkt. No. 10); Petitioner Springsteen's Response (Dkt. No. 12); and Respondent's Reply (Dkt. No. 13). The District Court referred the Motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended. The Court held a hearing on the motion on September 5, 2013.

## I.  FACTUAL BACKGROUND

Robert Springsteen, IV, who styles himself as "Petitioner," brings this case asking this Court for a finding of "actual innocence" in order to receive compensation for time served in Texas state prison, as provided in Section 103 of the Texas Civil Practice & Remedies Code. He names as the defendant, or "respondent," the Texas Comptroller, Susan Combs ("Combs"), who administers

---

[1]Although not included in the style of his Complaint, Springsteen identifies Combs under the "Parties" heading as the "respondent" in the pleading, and served her with a summons in the case. Complaint at 1; (Dkt. No. 1);  Request for Summons and Summons (Dkt. Nos. 2 & 3).

applications for compensation under the statute.  He asserts that the Court has diversity jurisdiction over his claims, as he is a resident of West Virginia, and the Comptroller is a resident of Texas.

The case stems from Springsteen's capital murder conviction related to what have become known as the "Yogurt Shop Murders."  In brief, late in the evening of December 6, 1991, four young women were sexually assaulted and murdered in Austin, Texas, at an  "I Can't Believe It's Yogurt" business.  Original Complaint at p. 2.  Springsteen, as well as others, was convicted of the crimes and sentenced to death.  *Id.* at p. 3. On June 22, 2005, Texas Governor Rick Perry commuted Springsteen's death sentence to life in prison. *Id.*  On May 24, 2006, the Texas Court of Criminal Appeals reversed Springsteen's capital murder conviction, and remanded the matter to the district court for a new trial.  The remand was based upon the finding that the admission of co-defendant Michael Scott's confession, which implicated Springsteen, violated the Confrontation Clause of the U.S. Constitution.  *Springsteen v. State*, 2006 Tex. Crim. App. LEXIS 2340 at *25 (Tex. Crim. App. May 24, 2006), *cert. denied*, 549 U.S. 1253 (2007).  The Court further found that sufficient evidence was presented at the trial court such that Springsteens' re-trial would not violate the Double Jeopardy or Due Process Clauses of the Constitution.  *Id.* at *3-*7.

After remand, on April 17, 2008, evidence was presented to the trial court showing that new DNA testing proved that none of the DNA samples found at the crime scene and on the victims matched Springsteen.  On June 24, 2009, Springsteen and a co-defendant were released from jail on bond pending their upcoming trials.  On October 28, 2009, the Travis County District Attorney filed a Motion for Dismissal , requesting that the charges be dismissed, as she was not prepared to go to trial on the case because law enforcement was still investigating matters raised by the DNA testing, and the trial court was unwilling to further continue the re-trial.  The trial court granted the motion

and dismissed all charges against Springsteen. In total, Springsteen was imprisoned for over nine years on the criminal charge.

Under the authority of § 103.001 of the Texas Civil Practice & Remedies Code,[2] on October 23, 2012, Springsteen made application to the Honorable Susan Combs, Texas Comptroller of Public Accounts, for compensation for being wrongfully imprisoned. An application under § 103.001

---

[2]The Wrongful Imprisonment Act reads in relevant part:

(a) A person is entitled to compensation if:

(1)    the person has served in whole or in part a sentence in prison under the laws of this state; and

(2)    the person:

    (A)    has received a full pardon on the basis of innocence for the crime for which the person was sentenced;

    (B)    has been granted relief in accordance with a writ of habeas corpus that is based on a court finding or determination that the person is actually innocent of the crime for which the person was sentenced; or

    (C)    has been granted relief in accordance with a writ of habeas corpus and:

        (i)    the state district court in which the charge against the person was pending has entered an order dismissing the charge; and

        (ii)    the district court's dismissal order is based on a motion to dismiss in which the state's attorney states that no credible evidence exists that inculpates the defendant and, either in the motion or in an affidavit, the state's attorney states that the state's attorney believes that the defendant is actually innocent of the crime for which the person was sentenced.

TEX. CIV. PRAC. & REM. CODE § 103.001(a).

requires that the applicant include "a verified copy of the pardon/court order/motion to dismiss/affidavit justifying the application for compensation." Complaint, Ex. A-1. On December 13, 2012, Combs denied Springsteen's application. On December 21, 2012, Springsteen again requested compensation from the Comptroller, and on February 14, 2013, Combs once again denied the application. Complaint Ex. C.

Springsteen asserts he is entitled to the statutory compensation and relief guaranteed him by the State of Texas pursuant to Texas Civil Practice & Remedies Code § 103. He purports to bring this suit under Chapter 37 of the Texas Civil Practice & Remedies Code (the declaratory judgment provisions), and the federal declaratory judgment statute, 28 U.S.C. § 2201. He requests a declaration that he is actually innocent of the crimes for which he was imprisoned. Springsteen further requests that, following a finding by this Court of actual innocence, and following the filing by Springsteen of a claim for compensation under the statute, Springsteen be granted mandamus relief from this Court ordering Combs to issue payment of his claim. He also requests costs and attorney's fees.

Respondent Susan Combs moves to dismiss Springsteen's Petition. She argues: (1) that as Comptroller she has Eleventh Amendment immunity from Springsteen's suit; (2) the federal courts lack jurisdiction to grant "mandamus" relief against a state official; and (3) Springsteen lacks standing to bring his claims in federal court.

## II.  ANALYSIS

### A.    Standard of Review

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The burden to establish federal jurisdiction is on the party invoking jurisdiction. *Id.* Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter

jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted).

### B.       Eleventh Amendment Immunity

Combs argues that this Court has no jurisdiction over Springsteen's claims against her because she is immune pursuant to the Eleventh Amendment. Springsteen has brought suit in federal court against the Comptroller for actions taken in her official capacity as the state officer in charge of administering monetary disbursements under state law—Chapter 103 of the Texas Civil Practice & Remedies Code. Complaint at pp. 18-20, 22. Because it is settled that state officials are immune from state law claims for money in federal court, Combs argues that this suit against the Comptroller is barred entirely and must be dismissed. *See McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) (the *Young* exception does not apply to state law claims).

This is that rarest of cases in which the literal meaning of the words of the Eleventh Amendment actually apply to the scenario presented to the Court.[3] The Eleventh Amendment states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. As noted earlier, Springsteen is a citizen of West Virginia. He names as the defendant (or "respondent") Susan Combs in her official capacity as the Texas Comptroller of

---

[3]There are legions of cases and articles discussing the gap between the 43 words of the Eleventh Amendment and the interpretation given those words by case law. *See, e.g., Pennsylvania v. Union Gas Co.*, 491 U.S. 1 (1989) (discussion in majority, concurring, and dissenting opinions regarding meaning of the Amendment); and *id* at 25 (Stevens, concurring) ("Several of this Court's decisions make clear that much of our state immunity doctrine has absolutely nothing to do with the limit on judicial power contained in the Eleventh Amendment.").

Public Accounts.  It is well-settled that a suit against a state official in their official capacity is a suit against the state itself.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Thus, this is a case against Texas—"one of the United States"—by a citizen of West Virginia—a "Citizen[ ] of another State." Under the plain language of the Eleventh Amendment, the power of the federal courts "does not extend" to such a case.  *See also, Green v. State Bar*, 27 F.3d 1083, 1087 (5th Cir. 1994); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  And regardless of what the plain language of the Amendment states, the interpretation the Supreme Court has given the Eleventh Amendment clearly bars a suit against a state unless the state has consented to the suit, or Congress has properly abrogated the state's immunity.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984).  There is no argument here that any waiver of Texas' immunity applies to this case.

The Supreme Court's decision in *Ex Parte Young* created an exception to Eleventh Amendment immunity for claims seeking only prospective injunctive relief.  *Ex Parte Young*, 209 U.S. 123 (1908).  The *Ex Parte Young* doctrine "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142 (1993).  For the *Ex Parte Young* exception to apply, the "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir.1992).  The Supreme Court recently explained more succinctly that to avoid an Eleventh Amendment bar under the *Ex parte Young* doctrine, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of *federal law* and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, ⸺ U.S. ⸺, 131 S.Ct. 1632, 1639 (2011) (emphasis

added) (quoting *Verizon Md. Inc. v. Pub. Svc. Comm'n.*, 535 U.S. 635, 645 (2002) (internal citation and quotation marks omitted)).

In an attempt to fit his case within the *Ex Parte Young* exception to Eleventh Amendment immunity, and make out a violation of a federal law, Springsteen asserts that he has identified several violations of his Constitutional rights in his pleadings. Specifically, Springsteen alleges:

- that he has been deprived of life, liberty, or property without due process of law in violation of the Fifth Amendment;

- that he was denied the right to a speedy trial and right to confront witnesses in violation of the Sixth Amendment;

- that he was subject to excessive bail, excessive fines, and/or cruel and unusual punishment in violation of the Eight Amendment; and

- that he was deprived of life liberty or property without due process of law and denied equal protection under the law pursuant to the Fourteenth Amendment.

Complaint at p. 2. The failing of this argument is that these alleged violations are not related in any way to Springsteen's claims against the Comptroller, but rather appear to arise out his prosecution, conviction, and imprisonment. Whether or not he received a speedy trial, or due process, or suffered cruel and unusual punishment in his underlying criminal case, has no bearing on whether Combs' properly denied Springsteen's request for compensation under Section 103. Assuming that Springsteen has such constitutional claims to raise,[4] the proper defendant would not be the Comptroller, but rather the law enforcement, district attorney, and prison officials who prosecuted and imprisoned him. Similarly, these alleged constitutional violations are unrelated to his request

---

[4]In all likelihood any such claims would be barred by the two year statute of limitations for § 1983 claims, given that the criminal charges were dismissed on October 28, 2009, and this suit was not filed until May 23, 2013, more than three-and-a-half years later. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993) (Section 1983 claims are governed by Texas' two-year statute of limitations for personal injury claims).

to be declared "actually innocent" of the murders.  More to the point, there is nothing in the Complaint suggesting that Springsteen is trying to bring a § 1983 claim for constitutional violations. Rather, his claim is plainly presented as a request for a declaratory judgment that he is innocent of the murders, and a "conditional" request for a writ of mandamus directing the Comptroller to approve his application for compensation for being wrongfully imprisoned.  Springsteen has not alleged a violation of federal law committed *by the Comptroller* that would be cured by prospective injunctive relief directed to the Comptroller.  This does not meet the *Ex Parte Young* exception.

Springsteen also somewhat convolutedly asserts that this suit is for declaratory relief, and thus is a suit brought in equity subject to the *Ex Parte Young* exception to immunity. *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945).  This argument misses the mark, however.  As noted above, *Ex Parte Young* permits suits against a state where the suit is seeking prospective injunctive relief.  This is not such a suit.  Springsteen is seeking a declaration that he is actually innocent of the Yogurt Shop Murders.  Such an order is not directed to a state official, and does not grant relief in the future.  Further. it is well settled that the federal "Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present." *Jones v. Alexander*, 609 F.2d 778, 780 (5th Cir. 1980).  Springsteen does not identify an independent basis for federal jurisdiction.  The Declaratory Judgment Act is insufficient by itself to establish a federal cause of action sufficient to qualify for the *Ex Parte Young* exception to immunity that requires that Springsteen make out a federal claim.

In sum, the Eleventh Amendment bars this suit, and Springsteen's arguments to the contrary miss the mark—by quite a distance.  For this reason, the Court should dismiss this case for lack of jurisdiction.[5]

### B.     Mandamus

Combs next argues that the federal courts lack the power to grant mandamus relief directing an official of a state in the performance of their duties, citing *Emerson v. Ownes*, 472 Appx. 308 (5th Cir. 2012) (unpublished).  Combs is correct that the Fifth Circuit has held that federal courts have no jurisdiction to compel state officials to perform a duty under state law, unless federal jurisdiction is in some way impaired.  *Moye v. Clerk, Dekalb County Superior Court*, 474 F.2d 1275, 1275-76 (5th Cir. 1973) (federal courts have no authority "to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought.").  To the extent Springsteen is seeking mandamus relief, the Court lacks jurisdiction to award that relief.

Combs also argues that state law permits only the Texas Supreme Court to issue a writ of mandamus against the Comptroller for any alleged error in denying an application under § 103, and only in limited circumstances. TEX. GOV'T CODE § 22.002(c).  In a recent case in which mandamus relief against the Comptroller was granted, the Texas Supreme Court stated:

> The Comptroller's duty in determining eligibility is purely ministerial. TEX. CIV. PRAC. & REM. CODE § 103.051(b–1). The Comptroller's denial of a claim is not

---

[5]Springsteen attempts to rely on diversity jurisdiction as an alternative basis for jurisdiction. First, even if there were diversity jurisdiction here, the Eleventh Amendment would still bar the suit, as it prevents a state from being sued in federal court to require it to comply with state law. Moreover, there is *not* diversity of citizenship in this case.  The diversity statute—28 U.S.C. § 1332—requires that diversity exist between "citizens of different States." *Id.* at (a)(1).  "[A] state is not a 'citizen' for the purposes of diversity jurisdiction." *Tradigrain, Inc. v. eMiss. State Port Auth.*, 701 F.2d 1131, 1131 (5th Cir. 1983).

> reviewable by appeal, but a claimant may seek review through a mandamus proceeding. TEX. CIV. PRAC. & REM. CODE § 103.051(e). "The original proceeding must be filed in this Court because only the Supreme Court may issue a writ of mandamus against an officer of the executive department of this state, such as the Comptroller." *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (citing *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 672 (Tex. 1995)); *see* TEX. CONST. ART. V, § 3(a), TEX. GOV'T CODE § 22.002(c). This Court's general authority to issue a writ of mandamus extends to "order or compel the performance of a judicial, ministerial or discretionary act or duty that, by state law, the officer or officers are authorized to perform." *Smith*, 333 S.W.3d at 585 (quoting TEX. GOV'T CODE § 22.002(c)); TEX. CONST. ART. V, § 3(a). Together with the Tim Cole Act, the Constitution and the Government Code vest this Court with authority over this original mandamus proceeding. *See Smith*, 333 S.W.3d at 585.

*In Re Allen*, 366 S.W.3d 696, 701 (Tex. 2012). In light of the foregoing, this Court questions why Springsteen did not request a writ of mandamus from the Texas Supreme Court when there is clearly jurisdiction to make that request to that court.[6]

## C.    Standing

Finally, Combs asserts that Springsteen does not have standing to bring his claims in federal court because he cannot demonstrate causation or redressability. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Allen v. Wright*, 468 U.S. 737, 751 (1984)). There are three elements necessary for constitutional standing. The first element, an "injury in fact," requires a "concrete and particularized . . . invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (citations omitted). The second element requires "a causal connection between the injury and the conduct complained of" such that the injury

---

[6]In all likelihood, he did not do so because he is aware that he cannot meet the requirements of the statute until he obtains a finding of actual innocence in a habeas proceeding, or receives some sort of habeas relief, along with a dismissal of the charges based on a motion to dismiss in which the prosecutor states the she believes he is actually innocent of the crimes. But that then begs the question, why not seek those finding and motions in the state trial court in which he was charged, and which granted the dismissal of the charges?

is traceable to the challenged conduct. *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

Combs argues that Springsteen cannot show that the Comptroller is the cause of any injury arising from any past or future criminal prosecution of Springsteen. The Comptroller has no authority over criminal prosecutions and no authority to adjudicate a claim of "actual innocence." As noted, the Texas Supreme Court has held that the Comptroller's duties with regard to Section 103 are purely ministerial. *In Re Allen*, 366 S.W.3d at 701. Thus, Combs argues, Springsteen cannot show that Combs is the cause of his injury. With regard to redressability, Combs asserts that even if this Court declares Springsteen actually innocent it will not be sufficient to render him eligible for compensation pursuant to Section 103 because he must be found "actually innocent" in a habeas proceeding, and Springsteen is not proceeding in this Court through a habeas petition.

Springsteen does not respond to these arguments. He argues he suffered an injury when he was wrongly incarcerated and that the State of Texas continues to injure him by denying him compensation. He asserts that a declaration of "actual innocence" by this Court would remedy the situation because Section 103 does not require that such a declaration be made by a state court. He fails to explain how such a finding would solve the problem with regard to the statutory requirement that such a finding be made in the context of a habeas corpus proceeding.

The Court agrees with Combs that Springsteen's claim fails the redressability prong of the standing analysis. Assuming that this Court somehow had jurisdiction outside of a habeas corpus petition to review the State of Texas' evidence against Springsteen and decide whether he was actually innocent of the crimes for which he was previously convicted—it would still not redress the harm Springsteen is complaining of: being denied compensation under Chapter 103 of the Texas Civil Practice and Remedies Code. Whether he is entitled to such compensation under Texas law

11

is a question first for the Texas Comptroller, and then for the Texas Supreme Court. The Comptroller has pointed out that even a finding by this Court of Springsteen's actual innocence would not lead to his receipt of compensation under the statute, given that the statute requires such a finding take place in the context of a habeas corpus proceeding. Thus, even if this Court had jurisdiction to consider some portion of Springsteen's claims, the Court lacks the authority to redress the wrong on which Springsteen bases this suit.

### III.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** Respondent Susan Combs' Motion to Dismiss for Lack of Jurisdiction (Dkt. No. 10), and **DISMISS** the case **WITHOUT PREJUDICE.**

### IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 19th day of September, 2013.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE